## Kingham Estate

*Bean, DeAngelis, Tredinnick & Giangiulio,* and
*H. James Sautter,* for accountant.

*Gilbert P. High,* for legatees.

*George A. Purring,* p.p., guardian ad litem.

TAXIS, P. J., April 3, 1964.—The first account of
Fidelity-Philadelphia Trust Company, executor, was
examined and audited by the court on March 2, 1964.

By decree of this court entered November 2, 1962,
decedent had been declared an incompetent, and Indus-
trial Valley Bank and Trust Company was appointed
his guardian. He died on November 25, 1962.

Prior to the adjudication of incompetency there had
been created three accounts of which decedent was a
"joint tenant with right of survivorship and not as
tenant in common". One of these was a checking ac-
count in Fidelity-Philadelphia Trust Company of
which his daughter, Ruth Chambers, was cotenant;
another was a saving or investment share account in
Willow Grove Federal Savings and Loan Association
(No. S11341) of which Ruth Chambers was also co-
tenant; and the third was a savings or investment
share account in Glenside Federal Savings and Loan
Association (No. 7876) of which his widowed daugh-
ter-in-law, Emily Kingham, was cotenant. As of the
date of incompetency, November 2, 1962, the balance
in each of these three accounts was between $2,000 and
$2,500.

At the audit of Industrial's account as guardian,
this court was asked to rule upon the question of what
portion of these accounts Industrial was accountable
to Fidelity-Philadelphia Trust Company which had

then qualified as decedent's executor and in its adjudication the court reserved this question until the audit of the executor's account, which is now before us for adjudication.

It is the contention of Ruth Chambers and Emily Kingham that upon the adjudication of incompetency, the joint estate was severed and Industrial, as guardian, became tenant in common with the other cotenant as to each of the accounts. It seems to be well settled that a joint tenancy is severable by the action, voluntary or involuntary, of either of the parties and the effect is to make them tenants in common: Stenger v. Epler, 382 Pa. 411, 417. Such, for instance, is the effect of an attachment of a joint account for the debt of one of the cotenants: American Oil Company v. Falconer, 136 Pa. Superior Ct. 598. The general rule is more broadly stated in 14 Am. Jur. 87.

". . . anything which destroys the unity of title or interest without affecting the unity of possession will turn the interest severed from the others into a tenancy in common as regards the remaining joint tenants."

The question submitted is whether an adjudication of incompetency operates as a severance. Two Pennsylvania cases have treated this issue and should be considered.

In Reppert v. First National Bank of Allentown, 10 Fiduc. Rep. 481 (1960), the court ruled that the joint tenancy there created had been severed by the declaration of incompetency and that the parties thereby achieved the status of tenants in common with the result that each was entitled to one-half of the fund. The issue in the Reppert case arose when the competent co-owner brought suit to restrain the guardian of the incompetent coowner from disposing of the fund and to compel a severance of the fund.

In Misto Estate, 22 D. & C. 2d 129 (1960), the court ruled that, in the circumstances of that case, the joint

tenancy of a bank account was not severed by the declaration of incompetency; rather, the guardian was obliged to preserve the bank account in *status quo* so that the coowner would acquire the fund at the incompetent's death; thus preserving the estate plans earlier made by the incompetent. The issue in the Misto case arose, as in the case at bar, at the audit of the account of the executor of the deceased incompetent upon the claim of the coowner for the bank account fund, which had been withdrawn by the guardian therein.

In Misto Estate, the court reasoned that, page 133: "The guardian's unauthorized withdrawal of these funds disturbed the *status quo*, the carefully planned dispositive scheme of the person who later became incompetent, which it had no right to do any more than it had any right to revoke any will of the incompetent (and she had one) or to change any beneficiaries on her insurance policies, all very personal rights reserved unto the incompetent himself, which no guardian can usurp."

The court clearly indicated that such a guardian could withdraw from such accounts, with the approval of the court, when necessary for the care, maintenance or education of the incompetent, her spouse, children, or those for whom she was making provision before incompetency.

In the present case, the estate of the incompetent, excluding the bank account in question, was sufficient to meet the needs of the incompetent, and the *status quo* of the bank account in question was never disturbed. Accordingly, the estate plan of the decedent should not now be disturbed, and the bank accounts are awarded in full to the surviving coowners . . .

And now, April 3, 1964, this adjudication is confirmed nisi.